# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF TEXAS
# DALLAS DIVISION

| | |
|---|---|
| Montage Mortgage, LLC<br><br>    Plaintiff,<br><br>vs.<br><br>Pacific Union Financial, LLC, John Perry, Valerie Coleman, Caitlin V. Cooke, Eduardo Creque, Jessica M. Furr (Keen), Kathy Keller, Fouad Naghmi, Tammy Neal, Charles F. Peer, Michaelene Whyte, and Melissa Willoby,<br><br>    Defendants. | Case No.: 3:17-cv-02971-S |

**PLAINTIFF MONTAGE MORTGAGE, LLC'S MEMORANDUM
IN SUPPORT OF ITS MOTION TO COMPEL DEFENDANT
<u>PACIFIC UNION FINANCIAL, LLC'S PRODUCTION OF DOCUMENTS</u>**

August 9, 2018

**TABLE OF CONTENTS**

TABLE OF CONTENTS ................................................................................................................ i

TABLE OF AUTHORITIES ......................................................................................................... ii

BACKGROUND ........................................................................................................................... 2

    I.      Procedural History: Removal to Federal Court and Scheduling Order ................ 2

    II.     The At-Issue Document Requests .......................................................................... 3

LEGAL STANDARD .................................................................................................................... 5

ARGUMENT ................................................................................................................................. 6

    I.      Pacific Union is Refusing To Produce Highly Relevant Email
           Communications ..................................................................................................... 6

    II.     Pacific Union is Withholding Complete Versions of Audited Financials
           Without Justification ............................................................................................... 9

    III.    Pacific Union Agreed to Produce Relevant Documents But Now Refuses To
           Comply With Its Discovery Obligations ................................................................ 9

    IV.   Pacific Union Has Waived Any Privilege Related to a Highly Relevant
           Litigation Hold Memorandum and Failed to Produce a Privilege Log ............... 10

CONCLUSION ............................................................................................................................ 13

# **TABLE OF AUTHORITIES**

**Cases**                                                                                                                         **Page(s)**

*Burlington N. & Santa Fe Ry. v. U.S. Dist. Court*,
  408 F.3d 1142 (9th Cir. 2005) ...................................................................................12

*Heller v. City of Dallas*,
  303 F.R.D. 466 (N.D. Tex. 2014) ................................................................................6

*Motion Indus. v. Superior Derrick Servs., LLC*,
  No. 15-cv-1958, 2016 U.S. Dist. LEXIS 23826 (E.D. La. Feb. 26, 2016) ...............13

*Nguyen v. Excel Corp.*,
  197 F.3d 200 (5th Cir. 1999) ....................................................................................11

*Orchestratehr, Inc. v. Trombetta*,
  178 F. Supp. 3d 476 (N.D. Tex. 2016) ........................................................................6

*SEC v. Brady*,
  238 F.R.D. 429 (N.D. Tex. 2006) .............................................................................12

*Sky Techs. LLC v. IBM, Inc.*,
  No. 03-cv-545, 2006 U.S. Dist. LEXIS 100667 (E.D. Tex. Feb. 13, 2006) .............11

*Treppel v. Biovail Corp.*,
  233 F.R.D. 363 (S.D.N.Y. 2006) ................................................................................8

*Universal City Dev. Ptnrs, Ltd. v. Ride & Show Eng'g, Inc.*,
  230 F.R.D. 688 (M.D. Fl. 2005) ...............................................................................13

**Statutes**

18 U.S.C. § 1836 ..................................................................................................................9

Fed. R. Civ. P. 26(b)(1) ............................................................................................... 5, 8, 9

Fed. R. Civ. P. 26(b)(5) ................................................................................................12, 13

Fed. R. Civ. P. 34(b)(2) .......................................................................................................2

Fed. R. Civ. P. 37(a)(3)(B) .................................................................................................5

Fed. R. Civ. P. 37(g) ...........................................................................................................5

Tex. Civ. Prac. & Rem. Code § 134A.004 .........................................................................9

Plaintiff Montage Mortgage, LLC ("Montage") respectfully submits this Memorandum in Support of its Motion to Compel Defendant Pacific Union Financial, LLC's Production of Documents ("Motion"). Plaintiff Montage and Defendant Pacific Union Financial, LLC ("Pacific Union") are competitors in the mortgage industry. *See* Dkt. 3-24, Second Amended Petition ("S.A.P"), at ¶¶ 28, 41. This Action was brought because Pacific Union misappropriated Montage's trade secrets and confidential information, including customer lists, active loan pipelines, and non-public consumer loan files. *Id.* ¶¶ 22-28. This Motion concerns four issues.

*First*, Pacific Union is refusing to produce communications in its possession sent from personal email accounts that were used to misappropriate Montage's information. Pacific Union is objecting on the basis of burden, but will not provide specific numbers or data to quantify their alleged burden, such as email hit counts. Moreover, Pacific Union itself first proposed certain email custodians, but now is refusing to proceed with its own proposal, despite the fact that the relevant documents undoubtedly exist. Disagreement over email custodians does not absolve Pacific Union of its obligations under Rule 26 and 34 to produce relevant documents.

*Second*, Montage requested Pacific Union's audited financials for years 2014, 2015, and 2016. These are necessary for Montage's damages model, which includes Pacific Union's unjust enrichment. However, Pacific Union only produced two pages of financials from 2015 and 2016, rather than the complete documents. Pacific Union should be ordered to produce the complete and intact versions of the audited financials for 2014, 2015, and 2016.

*Third*, Pacific Union agreed to produce several categories of documents over a year ago. These include, among other things, transfer letters from borrowers moving their loans from Montage to Pacific Union, and profit and loss statements associated with the retail lending branches taken by Pacific Union. Despite the high relevance of these documents, Pacific Union

will not produce them as promised. Rule 34 provides 30 days to respond, and Pacific Union has provided no justification for its repeated delays. Fed. R. Civ. P. 34(b)(2).

*Fourth*, Montage requested documents related to a litigation hold memorandum ("Litigation Hold Memo") that Pacific Union voluntarily produced over a year ago. Pacific Union has never claimed that the Litigation Hold Memo is privileged. Pacific Union also has not produced a privilege log, despite two requests to do so. Accordingly, Pacific Union has waived any privilege it may have asserted for documents related to the Litigation Hold Memo. Montage also requests that Pacific Union be ordered to timely comply with Rule 26(b)(5)'s privilege log requirements for any and all other relevant documents it is withholding.

## BACKGROUND

### I.  Procedural History: Removal to Federal Court and Scheduling Order

This Action was originally filed on March 14, 2016 in the 298th Judicial District Court of Dallas County Texas. *See* Dkt. 2-2 (Original Petition). On April 25, 2017, Montage served Pacific Union with Plaintiff's Second Request for Production of Documents (the "Requests"). *See* Ex. A (App.2). On June 22, 2017, Pacific Union provided its formal response. *See* Ex. B, Pacific Union's Objections and Responses to Montage's Second RFP ("Objections") (App.11). For many of the Requests, Pacific Union declined to produce any documents at all. *Id*. In some cases, Pacific Union agreed to "confer in good faith." *Id*. The parties met and conferred twice in August 2017. After the parties were unable to resolve disagreements concerning the Requests, on October 12, 2017, Montage filed a motion to compel in the state court proceeding.

Thereafter, Pacific Union and the Individual Defendants removed the state court proceeding to this Court on October 27, 2017. Dkt. 1 (Notice of Removal).[1] As such, Defendant

---

[1] Montage served the Second Amended Petition on September 29, 2017.

Pacific Union never responded to the original motion to compel filed in Dallas County.

During the Rule 26(f) conference, the parties agreed that discovery exchanged in the state court proceeding may be used in this federal proceeding. *See* Dkt. 45, ¶ 4, Agreed Scheduling Order ("Scheduling Order"). Specifically, the Scheduling Order states:

> All discovery commenced or taken prior to the removal of this action may be used in this action and will be subject to the Federal Rules of Civil Procedure. Motions to compel or for protective orders with regard to responses, objections, or other disputes involving discovery served before removal may be raised with the Court in conformity with the procedures outlined in Paragraph 6 of this Order.

*Id.* Paragraph Six of the Scheduling Order strongly encourages the parties to confer in good faith before seeking judicial intervention. *Id.*, at ¶ 6.

## II. The At-Issue Document Requests

Although the parties had already discussed the at-issue Requests extensively in the state court proceeding, on July 5, 2018, counsel for Montage sent a letter to counsel for Defendant Pacific Union requesting that the parties continue to confer before involving this Court in the matters. *See* Ex. C, July 5, 2018 Letter From Jeffrey Blackwood ("July 5 Letter") (App.27). The July 5 Letter identified or requested additional information on four issues relevant to this Motion:

- Issue One: A proposed email search that was under-inclusive (Requests Nos. 1 and 14). Montage requested more information on how the search was to be conducted.

- Issue Two: Pacific Union only produced a few truncated pages of audited financials, rather than the complete document (Request No. 19).

- Issue Three: Requests which Pacific Union agreed to produce responsive documents to over a year ago, but still has not done so (Request Nos. 11, 12, 15).

- Issue Four: The production of a privilege log in conformance with Federal Rule of Civil Procedure 26(b)(5). The July 5 Letter noted that a privilege log had been

requested in the state court proceeding on October 12, 2017.

On July 18, the parties met to further discuss the issues, including documents Pacific Union agreed to produce over a year ago. Concerning Requests 11 and 15, counsel for Pacific Union stated that they thought they would be able to produce the documents "within two" weeks. As of the filing of this Motion, Pacific Union still has not produced any documents responsive to these Requests. Pacific Union also has not provided any explanation for the delay, nor bothered to contact Montage after failing to meet its own estimated production timelines.

The parties also discussed the manner in which certain email searches would be conducted for Requests 1 and 14. Request 1 seeks highly relevant communications sent from the personal email accounts of the Individual Defendants to Pacific Union employees during a limited time frame of less than a year. Ex. A, Requests (App.5).[2] Request 14 seeks emails concerning Montage's loan pipelines. *Id*. (App.7). Because Pacific Union was primarily objecting to Requests 1 and 14 on the basis of burden, Montage requested information on the number of email hits associated with the proposed custodians.

But rather than providing any concrete numbers or information concerning specific custodians, counsel for Pacific Union responded via email that the "raw number of documents (particularly in response to RFP No. 1) still numbers in the tens of thousands, even after all 'de-duping.'" Ex. D., July 26, 2018 Email From Jeffrey Blackwood (App.32). Notably, Pacific Union also reversed course and made clear that they would no longer review the email custodians that it had originally proposed. *Id*.

Concerning Request 14, counsel would not state the number of documents at-issue, only

---

[2] Montage redacted the personal email addresses in the attached exhibits, consistent with "privacy and confidentiality concerns" noted by Individuals Defendants' when they redacted the same addresses in their Motion for a Stay of Discovery. *See* Dkt. 46, fn. 3.

that with the "appropriate use of keywords" and additional restrictive parameters, Pacific Union could "practicably identify and review responsive information that may exist related to pipelines." *Id*. However, Pacific Union's proposed parameters introduced new restrictive date criteria that significantly reduced the Relevant Time Period defined in Montage's Requests, which are the reasonable dates of June 21, 2015 to May 22, 2016. Ex. A, Requests (App.5). Pacific Union also proposed, without explanation, to only search emails that contain attachments.

In response, counsel for Montage explained that Montage needed concrete hit counts for the proposed custodians in order to meaningfully engage in further discussions on the scope of Requests 1 and 14. Ex. D, July 26, 2018 Email (App.32). Thus, Montage requested custodial hit reports with the following information: direct hits; the number of documents pulled in by families; unique document counts; and the total number of documents after deduplication across custodians. *Id*. Pacific Union has not responded to or otherwise acknowledged this email.

Concerning the privilege log requested on July 6, 2018 (originally requested under Texas state rules on October of 2017), Pacific Union will not state when they expect to produce a privilege log, or if they are working on producing one at all.

## LEGAL STANDARD

"Parties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense and proportional to the needs of the case. . . . Information within this scope of discovery need not be admissible in evidence to be discoverable." Fed. R. Civ. P. 26(b)(1). Federal Rule of Civil Procedure 37(g) governs motions to compel discovery responses, and provides that a party seeking discovery may move for the court to order production of documents when a party has not complied with Rule 34's dictates on the production of documents. *See* Fed. R. Civ. P. 37(a)(3)(B).

A party seeking to resist discovery "bears the burden of making a specific objection and showing that the discovery fails the proportionality calculation mandated by Rule 26(b)." *Orchestratehr, Inc. v. Trombetta*, 178 F. Supp. 3d 476, 505 (N.D. Tex. 2016). Defendants must also "show how the requested discovery was overly broad, burdensome, or oppressive by submitting affidavits or offering evidence revealing the nature of the burden." *Id.* at 507. General objections are invalid. *Heller v. City of Dallas*, 303 F.R.D. 466, 483 (N.D. Tex. 2014).

## ARGUMENT

Pacific Union's objections to the Requests should be overruled and it should be ordered to produce the relevant documents in its possession in accordance with the Federal Rules.

### I. Pacific Union is Refusing To Produce Highly Relevant Email Communications

Request 1 seeks emails sent or received from the personal email accounts of the Individual Defendants, limited from June 21, 2015 to May 22, 2016. Ex. A, Requests (App.5). The Request identifies eleven specific email addresses. *Id*. Montage made this Request because in order "[t]o hide their illicit activities from Montage, Individual Defendants used personal email accounts to send Montage's Protected Business Information to Pacific Union." S.A.P., ¶ 60. Indeed, the S.A.P. is rife with examples of specific personal email addresses being used as tools to carry out the conspiracy to misappropriate Montage's confidential information:

  i. On October 7 and 8, 2015, Defendant Keller used her personal email address to send Montage's Retail Group pipeline to Defendant Naghmi at his Pacific Union email address. The pipeline contained non-public consumer data from the months of February through September, including credit scores, total loan amount, loan number, and borrower name.

  ii. On October 15, 2015, Defendant Willoby received an email on her Montage email address from a customer. The email included initial loan disclosures with Pacific Union on the letterhead and stated that Pacific Union was the lender, despite the fact that Ms. Willoby worked for Montage.

  iii. On October 16, 2015, Defendant Furr used her personal email address to email

        Pacific Union employee Michael Lassiter requesting that Mr. Lassiter "start and send credit i [sic] will forward their docs once I have contract[.]" . . . Mr. Lassiter responded to Ms. Furr at her personal email address by attaching a PDF copy of the borrower's credit report. . . Upon information and belief, neither Defendant Pacific Union nor Defendant Furr obtained prior authorization from the borrower to send their credit report to an unsecured personal email account.

    iv.    On October 20, 2015, Defendant Keller used her personal email address to send a message to Defendants Furr and Naghmi (who was then working for Pacific Union) with the subject header: "Loans at Montage" (emphasis added). . . In the email, Defendant Keller asked whether the nine Montage loans should be "added to the list of moving to Pacific Union."

Dkt. 3-24, S.A.P. ¶¶ 62(a)-(ee).

    Similarly, Montage's Opposition to Individual Defendants' Motion to Dismiss contains over a dozen exhibits evidencing the use of personal email accounts to misappropriate Montage's information and send it to Pacific Union in Texas. *See* Dkt. 17-3, Appendix Exs. C, D, E, F, G, N, O, Q, T, U, V, W, Z, BB, and CC. One of those exhibits is an email Pacific Union sent to the Individual Defendants titled "Matching Transitional Loan with Actual Referring Loan Officer." *Id.*, Ex. CC. The email was sent to at least eight personal accounts, and it contains an attachment with a list of loans misappropriated from Montage. *Id.*, Ex. DD.

    Pacific Union's proposal for Request 1 was to search for the personal communications in the Individual Defendants' own *Pacific Union* custodian accounts, as well as the email accounts of two specialty lending group employees. Ex. C, July 5 Letter (App.28). In other words, Pacific Union's proposal largely involved searching for emails that the Individual Defendants sent to, from, or among themselves. However, Pacific Union's response to Montage's First Set of Interrogatories states that during the Relevant Time Period, the Individual Defendants also spoke to high level executives concerning their "onboarding" to Pacific Union, including Rick Skogg (Chief Executive Officer), Madison Simm (Chief Financial Officer), Brandon Story (Chief Strategy Officer), among others. *Id*. Therefore, Montage requested that the email

accounts for the employees that Pacific Union identified as having communicated with the Individual Defendants also be searched. Montage requested the hit numbers for each party's proposed custodians, but Pacific Union ignored this request. Ex. D, July 26 Email (App.32).

Request 14 seeks communications "concerning any Montage pipelines, in original or edited form, sent to or forwarded by any PacU employees." Ex. A, Requests (App.7). The Request references two produced documents by bates-number in order to clarify the type of communication Montage is seeking. *Id.* Pacific Union proposed that certain custodians be searched, but that the only keyword to be used was the word "pipeline." Pacific Union also objected on the basis that the Request does not define "Montage Pipeline." Ex. B, Objections (App.20). A mortgage "pipeline" is a common industry term, and the communication identified in Request 14 explains that pipeline means: "all active (non-canceled) loans each LO is currently working[.]" Thus, Montage counter-proposed a narrow set of fourteen search terms based on the bates-identified documents in Request 14. Pacific Union has not acknowledged or responded to this request, nor provided hit numbers for Montage's proposal.

To be clear, it was Pacific Union that introduced the concept of custodians and search terms for both Requests 1 and 14. Montage did not originally request specific custodians for *either* Request. Nonetheless, Montage attempted to cooperate with Pacific Union to narrow Requests 1 and 14, even though both Requests are already highly specific.

Rule 26(b)(1) of the Federal Rule of Civil Procedure provides that "[p]arties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense." It is improper for Pacific Union to altogether withhold relevant documents because of a disagreement on email custodians. *See Treppel v. Biovail Corp.*, 233 F.R.D. 363, 374 (S.D.N.Y. 2006) (plaintiff's refusal to stipulate to defendant's search protocol "does not excuse

[defendants'] failure to produce any responsive documents whatsoever. . . . Absent agreement with [plaintiff] about a search strategy, [defendant] should have proceeded unilaterally, producing all responsive documents located by its search.").

Because Requests 1 and 14 are "reasonably calculated to lead to the discovery of admissible evidence," Pacific Union should be compelled to respond. Fed. R. Civ. P. 26(b)(1).

## II. Pacific Union is Withholding Complete Versions of Audited Financials Without Justification

Pacific Union has produced only partial versions of important financial documents. Request 19 seeks "Pacific Union's audited financials for years 2014, 2015, and 2016." Ex. A, Requests (App.8). In response, Pacific Union only produced two "summary" pages of financials for years 2015 and 2016. Montage needs Pacific Union's complete audited financials to develop damages models. Damages based on unjust enrichment are explicitly provided for under the Texas Uniform Trade Secrets Act, and the Defend Trade Secrets Act. *See* Tex. Civ. Prac. & Rem. Code § 134A.004 ("Damages can include both the actual loss caused by misappropriation and the unjust enrichment caused by misappropriation…"); 18 U.S.C. § 1836 (damages recoverable for actual losses and "any unjust enrichment caused by the misappropriation").

Montage requests that the Court compel a complete response to Request 19, and to also order Pacific Union to produce full versions of all documents in future productions, subject to appropriate redactions for privileged material.

## III. Pacific Union Agreed to Produce Relevant Documents But Now Refuses To Comply With Its Discovery Obligations

Pacific Union agreed to produce documents in response to Requests 11, 12, and 15, ostensibly because the Requests seek documents that are highly relevant. Despite repeatedly following up on the status of these Requests, Pacific Union has not produced any documents.

Request 11 seeks documents related to the termination of Micah Greene and John Perry, both former employees of Montage that went to work for Pacific Union. Ex. A, Requests (App.7). Both of these individuals were also former Defendants. Perry quit his job at Montage on December 31, 2015. S.A.P. ¶ 19. Thereafter, Perry recruited Micah Greene to work for Pacific Union. *Id*. Mr. Greene testified that a "**condition of my employment with PacU** was that I bring loans from Montage to populate my New Employee Pipeline at PacU." *See* Dkt. 17-3, Affidavit of Micah Laverne Greene (App.3-6) (emphasis added). As such, information related to Pacific Union's termination of Perry and Greene's termination is highly relevant to this lawsuit and should be produced.

Request 12 seeks "all letters from borrowers requesting to transfer their loan from Montage to Pacific Union." Ex. A, Requests (App.7). Despite agreeing to respond to Request, Pacific Union has not produced any responsive documents.

Request 15 seeks documents "evidencing the total revenue, profits, and loan origination volume attributed to the Montage Retail Group and Montage Call Center." Ex. A, Requests (App.8). The Montage Retail Group and Call Center are the two branches at the heart of this lawsuit, and were raided by Pacific Union without any compensation to Montage. S.A.P. ¶¶ 175-180. Moreover, Montage's Initial Disclosures identify Pacific Union's unjust enrichment as a source of damages. Pacific Union agreed to produce "profit and loss statements" for the Retail Group and Call Center, but still has not done so.

**IV.     Pacific Union Has Waived Any Privilege Related to a Highly Relevant Litigation Hold Memorandum and Failed to Produce a Privilege Log**

Request 6 seeks "communications related to, concerning, or discussing the 'Litigation Hold Memo' emailed to Pacific Union employees on March 17, 2016." Ex. A, Requests (App.6). On April 17, 2017 Pacific Union produced two iterations of the Litigation Hold

Memorandum in emails sent by its Vice President of Human Resources.[3]  The subject of the email, and the accompanying memorandum relate to "Micah Greene, John Perry, and Montage Mortgage."  As discussed above, Micah Greene and John Perry were former Montage employees and Defendants involved in the conspiracy to defraud Montage.  Moreover, the Memo discusses highly relevant topics including potential confidential information obtained from Montage, customer referrals from Montage, and Montage's loan data and consumer loan documents.

When a party voluntarily produces a specific privileged communication and breaks the protection of privilege, it constitutes a waiver as to all other communications on the same matter. *See Nguyen v. Excel Corp.*, 197 F.3d 200, 207 (5th Cir. 1999) (stating that a communication and any subsequent and related communications are waived of privilege when disclosed to a third party); *see also Sky Techs. LLC v. IBM, Inc.*, No. 03-cv-545, 2006 U.S. Dist. LEXIS 100667, at *15 (E.D. Tex. Feb. 13, 2006) ("The general rule regarding the voluntary disclosure of privileged attorney-client communications is that the disclosure waives the privilege as to all other communications on the same subject") (internal quotations omitted).

The Litigation Hold Memo was sent to former employees of Montage that were hired by Pacific Union, as well as the "Specialty Lending Group" which Pacific Union used to take loans from other mortgage companies.  *See* S.A.P. ¶¶ 123-148.  Communications about the Litigation Hold Memo to or from these people will likely relate to the misappropriation of Montage's trade secrets, which is the entire basis of this lawsuit.  *See SEC v. Brady*, 238 F.R.D. 429, 444 (N.D. Tex. 2006) ("Subject matter waiver of work product immunity occurs when it would be

---

[3] The Litigation Hold Memo was not marked "Confidential" pursuant to the operative Protective Order entered in the state court proceeding.  In an abundance of caution, Montage is not publicly filing the Memo, but will have copies available for the Court's review if the Court wishes to hold a hearing on the Motion.

-11-

inconsistent with the purposes of the work product privilege to limit the waiver to the actual documents disclosed, for example when the facts relevant to a narrow issue are in dispute and have been disclosed in such a way that it would be unfair to deny the other party access to other facts relevant to the same subject matter") (cleaned up). Pacific Union has made no attempt to claw back the Litigation Hold Memo, and as such this Court should compel the production of documents responsive to Request 6. *See* Fed. Evid. 502 (governing scope of waiver with respect to both intentional and inadvertent disclosure of privileged documents).

Pacific Union also has not produced a privilege log for the Litigation Hold Memo or any related documents. Montage originally requested a privilege log on October 17, 2017. Although Pacific Union removed the action after the initial request for the privilege log was made, removal does not absolve Pacific Union of its obligations under the Federal Rules to identify information withheld on the basis of privilege. *See* Fed. R. Civ. P. 26(b)(5) (setting forth elements required in privilege log). Moreover, the Scheduling Order was entered on June 29, 2018, and discovery is open and ongoing. Dkt. 45. As such, Montage requested a privilege log for a second time that was compliant with the Federal Rules on July 5, 2018. *See* Ex. C, July 5 Letter (App.29). At that point, it became incumbent on Pacific Union to respond within 30 days. *See Burlington N. & Santa Fe Ry. v. U.S. Dist. Court*, 408 F.3d 1142, 1449, n.3 (9th Cir. 2005) (if a litigant cannot produce a privilege log within Rule 34's 30-day time limit, "they may either secure an appropriate agreement or stipulation from the relevant litigants or, failing that, apply for a discovery or protective order"). Pacific Union did not do so.

"When a party invoking a privilege falls to comply with the Rule 26(b)(5) requirement to provide a privilege log, courts have routinely found that all assertions of privilege or other protections against the requested discovery have been waived." *Motion Indus. v. Superior*

*Derrick Servs., LLC*, No. 15-cv-1958, 2016 U.S. Dist. LEXIS 23826, at *8 (E.D. La. Feb. 26, 2016) (collecting cases); *see also Universal City Dev. Ptnrs, Ltd. v. Ride & Show Eng'g, Inc.*, 230 F.R.D. 688, 698 (M.D. Fl. 2005).

For these reasons, Pacific Union should produce all documents related to the Litigation Hold Memo.  Pacific Union should also be compelled to provide a privilege log, to the extent any documents not related to Request 6 are being withheld on the basis of privilege.

## CONCLUSION

For the forgoing reasons, this Court should compel Pacific Union to produce documents responsive to Requests 1, 6 11, 12, 14, 15, and 19 and overrule Pacific Union's objections.

Dated:  August 9, 2018                                Respectfully  submitted,

> */s/ Jason W. McElroy*
> Jason W. McElroy
> State Bar No. 24108416
> Jeffrey P. Blackwood*
> D.C. Bar No. 1027658
> McElroy@thewbkfirm.com
> Blackwood@thewbkfirm.com
> Weiner Brodsky Kider PC
> 1300 19th Street NW 5th Floor
> Washington DC 20036
> Office: (202)628-2000
> Facsimile: (202)628-2011
>
> * Admitted *Pro Hac Vice*
>
> **ATTORNEYS FOR PLAINTIFF**
> **MONTAGE MORTGAGE, LLC**

# **CERTIFICATE OF SERVICE**

I certify that on August 9, 2018, I caused a copy of the foregoing Memorandum In Support Of Montage's Motion to Compel be served via the Court's CM/ECF system and USPS First Class Mail upon the following parties and counsel of record:

| | |
|---|---|
| Ann Marie Painter<br>Jason R. Elliott<br>Hayden M. Schottlaender<br>Perkins Coie LLP<br>500 N. Akard St., Suite 3300<br>Dallas, Texas 75201<br>214-965-7723<br>214-965-7799 (fax)<br>ampainter@perkinscoie.com<br>jelliott@perkinscoie.com<br>hschottlaender@perkinscoie.com<br><br>Barak Cohen<br>Perkins Coie LLP<br>700 13th St NW, Suite 600<br>Washington, DC 20005-3960<br>202-654-6200<br>202-654-6211 (fax)<br>bcohen@perkinscoie.com<br><br>***Counsel for Defendant Pacific Union Financial, LLP*** | Tyree Preston Jones, Jr<br>Manasi Venkatesh<br>Reed Smith LLP<br>1301 K Street NW<br>Suite 1100<br>Washington, DC 20005<br>202-414-9296<br>202-414-9299 (fax)<br>tpjones@reedsmith.com<br>mvenkatesh@reedsmith.com<br><br>Stephan D Selinidis<br>Reed Smith LLP<br>811 Main<br>Suite 1700<br>Houston, TX 77002<br>713-469-3815<br>713-469-3899 (fax)<br>sselinidis@reedsmith.com<br><br>***Counsel for Defendants Catlin Cooke, Charles F. Peer, Eduardo Creque, Fouad Naghmi, Jessica M. Furr (Keen), Kathy Keller, Melissa Willoby, Michaelene, Whyte, Neal Tammy, Valeria Coleman*** |

/S/     *Jeffrey Blackwood*
Jeffrey P. Blackwood